UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| LUCIEN McARTHUR, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 21-cv-1171-JES |
| ) | |
| LEONTA L. JACKSON, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### ORDER ON MOTION FOR SUMMARY JUDGMENT

Plaintiff, proceeding *pro se*, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging that his Eighth Amendment rights were violated while he was incarcerated at Pontiac Correctional Center (Pontiac). Specifically, Plaintiff alleges that Defendant Sherri Power was deliberately indifferent to his medical needs by refusing to provide him with additional medical care after he was diagnosed with COVID-19 in May 2020, and that Defendant Wexford Health Sources, Inc. (Wexford) failed to train and supervise staff to follow medical protocols for COVID-19.

Now before the Court is Defendants Wexford and Power's Motion for Summary Judgment on Failure to Exhaust Administrative Remedies pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.1(D). (Doc. 16). For the reasons stated below, Defendants' Motion is GRANTED.

### MATERIAL FACTS

Plaintiff is an inmate within the custody of the Illinois Department of Corrections (IDOC). He filed his complaint on June 15, 2021. (Doc. 1). During the relevant time period, he was incarcerated at Pontiac. Plaintiff was diagnosed with COVID-19 on May 16, 2020.

1

From May 16, 2020 until May 26, 2020, Plaintiff told the nurses every day that his condition was deteriorating and he had trouble breathing. *Id.* at 3. Specifically, when he told nurses he could not breathe on May 21, 2020, the nurses allegedly gave him medication and then rushed off. *Id.* On May 26, 2020, Plaintiff received a sick call pass to see a nurse practitioner, who checked his blood pressure and "O2 sat." *Id.* at 3-4. Plaintiff alleged Defendants failed to follow medical directives or guidelines to ensure he received medical treatment after they left him in his cell while he had pneumonia. *Id.* at 5. According to this Court's Merit Review Order, Plaintiff articulated an Eighth Amendment deliberate indifference claim against nursing staff who met with Plaintiff from May 16, 2020 and May 26, 2020, and against Wexford for allegedly failing to train and supervise employees. (Doc. 8 at 2-3).

A. **Grievances Appealed to the ARB**

Between January 1, 2020 and November 10, 2021, Plaintiff submitted ten grievances to the Administrative Review Board (ARB). (Doc. 72-1 at ¶ 9; Doc. 72-4).

1. **Grievance 10**

On January 30, 2020, the ARB received a grievance dated January 26, 2020. (hereinafter "Grievance 10"). It was not given a grievance number. Plaintiff alleged the food at Pontiac "is not up to temperature," and there is no hot water in the kitchen to clean properly. He requested the food be cooked at the correct temperature and the hot water turned on in the kitchen. Plaintiff indicated the grievance was an emergency grievance. It was not submitted for a counselor's response, nor was it reviewed by the CAO. There is also no grievance officer's report. On February 4, 2020, the ARB returned

the grievance because Plaintiff failed to include responses from the counselor, grievance officer, and the CAO. Plaintiff also failed to include the dates the incidents occurred. (Doc. 72-4 at 63-64).

2. **Grievance 083172**

On April 24, 2020, the ARB received grievance #083172 dated January 26, 2020. Plaintiff alleged the food at Pontiac was not prepared at the proper temperature and there were cockroaches in the food. Plaintiff checked the emergency grievance box on the grievance form. On February 6, 2020, the CAO reviewed the grievance and deemed it not an emergency. On March 2, 2020, a counselor responded and stated that kitchen area food was transported in hot boxes and cold boxes to ensure it meets IDPH standards. On April 10, 2020, the grievance officer responded to the grievance and recommended that it be denied. On April 14, 2020, the CAO concurred with the recommendation. On April 24, 2020, the ARB returned the grievance for failure to meet DR 504.810. (Doc. 72-4 at 59-62).

3. **Grievance 085714**

On August 28, 2020, the ARB received grievance #085714 dated May 11, 2020. Plaintiff complained staff at Pontiac altered KN95 masks by removing the metal that seals the mask around the nose. Plaintiff requested that staff stop altering inmates' KN95 masks. Plaintiff also alleged food supervisors did not wear masks. Plaintiff indicated the grievance was an emergency. On May 27, 2020, the CAO reviewed the grievance and deemed it a non-emergency grievance. On June 18, 2020, a counselor responded by stating the removal of the metal piece was an administrative decision. On August 21, 2020, the grievance officer recommended that the grievance be denied. The CAO

3

concurred on August 21, 2020. On February 5, 2021, the ARB concluded the grievance failed to meet DR 504F and returned the grievance. (Doc. 72-4 at 35-39).

4. **Grievance 086274**

On July 22, 2020, the ARB received grievance #086274 dated June 7, 2020. Plaintiff alleged nurse Hansen was unprofessional and "acting like a school girl trying to get all the boys['] attention" and nurse Hansen would not allow him have his COVID-19 paperwork. Plaintiff requested that nurse Hansen not handle any of his medical treatment or prescriptions because of her unprofessional actions. On June 22, 2020, the grievance counselor responded that the grievance concerned a medical issue and needed to go to the grievance office. On June 25, 2020, the grievance officer received the grievance and recommended that it be denied because allegations of staff misconduct could not be substantiated. On July 13, 2020, the CAO concurred with the recommendation. On December 3, 2020, the ARB denied the grievance and found the facility administration addressed the issue appropriately. (Doc. 72-4 at 40-43).

5. **Grievance 086273**

On November 4, 2020, the ARB received grievance #086273 dated June 7, 2020. Plaintiff alleged that he was released from the hospital and placed in a cell with no sheets. He requested that "this part of the system be fixed." On August 17, 2020, the counselor responded that offenders placed in quarantine are provided with an indigent bag and sheets at the request of the offender. On October 23, 2020, the grievance officer responded that Plaintiff had received all his property except for a pack of playing cards and his tablet and recommended that the grievance be denied. On October 26, 2020, the CAO concurred

with the grievance officer's decision. On March 1, 2021, the ARB denied the grievance and found it had been appropriately addressed by the facility administration. (Doc. 72-4 at 30-34).

6. **Grievance 086272**

On September 8, 2020, the ARB received grievance #086272 dated June 14, 2020. Plaintiff alleged unidentified nurses came to his cell to check his oxygen level twice a day after he was released from the hospital on June 4, 2020. An unidentified nurse allegedly told Plaintiff there was something wrong with the device and did not write down his oxygen level for the doctor to see. Plaintiff requested that nurses write down the proper readings and to "put down what they get my oxygen level up to before walking away." On June 22, 2020, the counselor issued a response, stating the grievance concerned a medical issue and needed to go to the grievance office. On August 25, 2020, the grievance officer received the grievance and wrote that a pulse oximeter worked best if adequate oxygen was being exchanged in the lungs and provided Plaintiff's vital signs according to his writ/furlough. The grievance officer considered the grievance moot. On August 25, 2020, the CAO concurred with the grievance officer's recommendation. On March 1, 2021, the ARB denied the grievance and found that the facility appropriately addressed the issue. (Doc. 72-4 at 25-29).

7. **Grievance 086359**

On November 6, 2020, the ARB received grievance #086359 dated June 23, 2020, regarding "nurses['] lack of response when [Plaintiff] was showing symptoms of COVID-19." Plaintiff alleged he complained to nurses that it was difficult to breathe. Plaintiff's

cellmate told nurses that Plaintiff was getting worse. A nurse practitioner checked Plaintiff's blood pressure and oxygen level and sent him to the healthcare unit. Plaintiff asked to know why he was left in his cell for ten days, why nurses were not "turning anything into the doctors regarding how sick an inmate is," and why he was not tested for COVID-19 before being released from quarantine. He also alleged he suffered damage to his lungs from pneumonia due to the "ignorance of Pontiac's nursing staff." On June 26, 2020, the counselor responded and stated the grievance concerned a medical issue and needed to go to the grievance office. On July 26, 2020, the grievance officer responded that Plaintiff was receiving appropriate medical treatment and recommended that the grievance be considered moot. On July 27, 2020, the CAO concurred with the grievance officer's decision. On November 21, 2020, the ARB returned Plaintiff's grievance because it was received thirty days past the CAO's decision. (Doc. 72-4 at 55-58).

### 8. Grievance 086698

On September 18, 2020, the ARB received grievance #086698 dated July 2, 2020. Plaintiff alleged he contracted COVID-19 and was rushed to the emergency room in an ambulance. Plaintiff claimed that unidentified staff members at Pontiac failed to socially distance and wear masks. On July 20, 2020, the counselor responded that Plaintiff failed to identify staff members in the grievance and did not comply with DR 504.810. On September 7, 2020, the grievance officer responded to the grievance, stating that it was impossible to contact staff members because Plaintiff did not identify anyone. The grievance officer recommended the grievance be rendered moot. On September 10, 2020, the Chief Administrative Officer (CAO) concurred with the grievance officer's

6

recommendation. On September 18, 2020, the ARB returned the grievance stating, "doesn't meet DR 504F; no review." (Doc. 72-4 at 19-23).

9. **Grievance 090946**

On March 9, 2021, the ARB received grievance #090946 dated January 26, 2021. Plaintiff claimed he had not received any mail since September, final summary reports, or grievances. He requested that the facility stop making his mail disappear. On February 11, 2021, a counselor responded that institutional mail is not logged and there is no way of tracking mail. On February 23, 2021, the grievance officer responded to the grievance and recommended that it be denied due to Plaintiff failing to "meet DR 504.810 (who, what, where, when)." On February 24, 2021, the CAO concurred with the grievance officer's recommendation. On March 10, 2021, the ARB returned the grievance because it was not submitted in the timeframe outlined in DR 504. (Doc. 72-4 at 15-17).

10. **Grievance 091327**

On April 1, 2021, the ARB received grievance #091327 dated February 8, 2021. Plaintiff alleged he was ordered to work in the kitchen even though he had a medical permit. When he refused to work, he received seven disciplinary tickets for disobeying direct orders. He requested that two final summary reports be expunged from his record and $200, "for not being able to shop wrongfully for over a month." On March 11, 2021, a grievance officer recommended that the grievance be denied based on a compliance review of the procedural due process safeguards outlined in DR 504. On March 17, 2021, the CAO concurred with the grievance officer's decision. On May 21, 2021, the ARB

7

denied the grievance and concluded the facility administration addressed the issue appropriately. (Doc. 72-4 at 1-12).

### B. Grievances Not Appealed to the ARB

Between January 1, 2020 and November 10, 2021, Plaintiff filed four additional grievances, which he did not appeal to the ARB. (Doc. 72-5).

#### 1. Grievance 083950

In grievance #083950, dated February 28, 2020, Plaintiff complained about a delay in receiving mail since December 2019. He requested that the facility stop delaying inmate mail. On March 6, 2020, a counselor responded and informed Plaintiff mail was delayed two to three weeks after Christmas, but the facility was caught up. The grievance was not submitted beyond the first level of the grievance process. (Doc. 72-5 at 14).

#### 2. Grievance 084140

In grievance #084140, dated March 6, 2020, Plaintiff alleged he was in pain every morning because he needed a new mattress. The counselor responded on March 11, 2020, and instructed Plaintiff to write to the MSU major, who would place him on a list for a new mattress. This grievance was not submitted to the grievance office. (Doc. 72-5 at 11).

#### 3. Grievance 084146

In grievance #084186, dated March 10, 2020, Plaintiff complained that inmates had not seen a memo about "wifi in the MSU." Plaintiff asked for the memo to be placed on the cellhouse walls so everyone could read it and find out who wrote it. On March 13, 2020, the counselor responded that a representative would conduct a survey of the Wi-Fi reach. The grievance was not submitted to the grievance office. (Doc. 72-5 at 12).

### 4. Grievance 084184

In grievance #084184, dated March 10, 2020, Plaintiff complained there was no money for movies. He requested the facility to rent movies and "stop spinning inmates with lies." On March 16, 2020, the counselor responded and stated a cord used to purchase rentals expired and the facility needed to obtain a new debit card to rent movies. Plaintiff did not submit his grievance to the grievance office. (Doc. 72-5 at 13).

Plaintiff did not dispute any of Defendants' Undisputed Material Facts in his Response. (Doc. 74). Therefore, these facts are deemed admitted. *See* CDIL-LR 7.1(D)(2)(b)(6).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). However, a court's "favor toward the nonmoving party does not extend to drawing 'inferences that are only supported by speculation or conjecture.'" *Id*. In order to successfully oppose a motion for summary judgment, a plaintiff must do more than

9

raise a "'metaphysical doubt' as to the material facts, and instead must present definite, competent evidence to rebut the motion." *Michael v. St. Joseph Cnty.*, 259 F.3d 842, 845 (7th Cir. 2001) (internal citation omitted). Plaintiff is the non-moving party, and the evidence and all reasonable inferences are viewed in the light most favorable to him. *Anderson*, 477 U.S. at 255.

## EXHAUSTION STANDARD

As an incarcerated individual, Plaintiff is subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, which requires an inmate to exhaust all available administrative remedies prior to filing suit. The PLRA provides that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." § 1997e(a); *see also Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000). If a prisoner fails to follow all of the necessary grievance procedures, the claim will not be exhausted, and will be barred, even if there are no remaining administrative remedies available. *Id*.

To properly exhaust administrative remedies, prisoners must "take each of the steps prescribed by the state's administrative rules governing prison grievances." *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020). The Seventh Circuit follows a strict compliance approach to exhaustion, requiring inmates to follow all grievance rules established by the correctional authority before filing suit. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). This includes "complaints about medical treatment in prison." *Perez v. Wisconsin Dep't Corr.*, 182 F.3d 532, 534 (7th Cir. 1999).

Plaintiff was required to follow the grievance procedures described in the regulations provided by the IDOC. *See* 20 Ill. Admin. Code § 504.800, *et seq*. The regulations require that a prisoner attempt to informally resolve an issue with his counselor. If unable to resolve the issue, the prisoner must file a written grievance, addressed to the grievance officer, within 60 days after the incident was discovered. *Id.* at § 504.810(a)-(b). For any grievance to serve as a basis for exhaustion, it must contain factual details, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. *Id.* at (c). If the offender cannot name specific individuals, the offender "must include as much descriptive information about the individual as possible." *Id.* Failing to provide sufficient factual or descriptive information is grounds for the Court to grant summary judgment for failure to exhaust administrative remedies. *See Northern v. Dobbert*, 816 F. App'x 11, 14 (7th Cir. 2020) (inmate failed to exhaust claim of inadequate wound care where grievance "mentioned wound care only once" and only in the context of an example of retaliatory conduct).

The grievance officer will review the grievance and forward a recommendation to the CAO, who will advise the prisoner of the decision. *See* § 504.830(e). If the prisoner is not satisfied with the CAO's decision, he has thirty days in which to file a written appeal to the IDOC Director, addressed to the ARB. *Id.* at § 504.850(a). The appeal must include copies of the grievance officer's report and the CAO's decisions, and the appeal must be received by the ARB within thirty days after the date of the CAO's decision. § 504.850; s*ee also Chambers*, 956 F.3d at 983. The ARB will submit its recommendation to the IDOC

11

Director, who will make a final determination within six months. § 504.850. However, grievances on issues that are without merit may be returned as denied to the sender without further investigation. § 504.830(a). These include grievances that are untimely, and for which good cause justification for the delay is not provided. § 504.860.

**ANALYSIS**

Plaintiff filed fourteen grievances between January 2020 and February 2021. Plaintiff appealed ten grievances to the ARB, which were either returned or denied because the facility resolved the issues appropriately. Plaintiff also filed four grievances that he did not appeal past the first level of the grievance process.

Of the ten grievances Plaintiff filed and appealed to the ARB, nine are inapplicable because they contained no allegations regarding Wexford or Plaintiff's complaints to nurses between May 21, 2020 and May 26, 2020 about his worsening COVID-19 symptoms, breathing problems, or any resulting injuries.

The remaining grievance – grievance #086359 – included factual allegations similar to his Complaint against Defendants Wexford and Power; however, the grievance was denied because it was received by the ARB more than thirty days after the CAO issued a decision and did not comply with § 504.850(a). *See Harris v. Baldwin*, 818 F. App'x 561, 563 (7th Cir. 2020) (holding inmate failed to exhaust when the ARB did not receive his appeal until over thirty days after the CAO's decision). The CAO issued a decision on grievance #086359 on July 27, 2020, but the ARB did not receive Plaintiff's appeal until November 6, 2020, at least ninety-six days after the CAO issued a decision.

In his Response, Plaintiff argues that Defendants did not submit a counseling summary with grievance #086359 to show the grievance was sent to the second level. (Doc. 74 at 6). This argument is immaterial. Further, a counseling summary was completed indicating that Plaintiff needed to request copies of grievance #086359 from the grievance office and that the facility does not get the second level decision. (Doc. 72-4 at 50). Plaintiff appears to be arguing that he did not intend to submit his grievance past the first level of the grievance process and that the grievance office somehow improperly submitted his grievance to the second level. (Doc. 74 at 6). Plaintiff asserts that even though he believed the grievance process was complete at the second stage, he submitted his grievance to the ARB "to let them know that Pontiac is back to their old tricks of hiding grievances." *Id*. at 7.

Plaintiff's Cumulative Counseling Summary shows that grievance #086359 was mailed to Plaintiff via the institutional mail service on July 27, 2020, the same day the CAO issued a decision. (Doc. 77-1 at 8). On October 19, 2020, Plaintiff requested and received a copy of the grievance from the records office. *Id.* at 7. Regardless of why he submitted this grievance to the ARB, he was required to submit it within the timeframe specified by law, and he failed to do so.

Plaintiff also failed to exhaust his administrative remedies regarding his deliberate indifference claim against Defendant Wexford because he failed to include any factual details in grievance #086359 about any policy, procedure, or custom that caused the alleged constitutional violation. This is necessary because there is no *respondeat superior* liability under § 1983. A private corporation cannot be held liable "unless the

13

constitutional violation was caused by an unconstitutional policy or custom of the corporation itself." *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). In the absence of a policy or custom, a Plaintiff can point to "a pattern of behavior that would support an inference of a custom or policy, as required to find that Wexford as an institution was deliberately indifferent to [the Plaintiff's] needs." *Id.* at 796.

Plaintiff alleges he suffered damage to his lungs due to the "ignorance of Pontiac's nursing staff," but he does not mention an unconstitutional policy or custom in his grievance. Even if there was a connection between Wexford and Plaintiff's grievance, there is no information that would alert Wexford to a custom or policy related to a failure to supervise or train its staff on COVID-19 protocols.

In his Response, Plaintiff does not dispute that he failed to include information in his grievance that would alert Wexford to an alleged policy or custom of failing to supervise or train its staff, as was required to properly exhaust his claims. Plaintiff has not adequately included facts in his grievance to exhaust his administrative remedies as to his claim against Wexford. *See Nally v. Obaisi*, 2019 WL 6527953, at *3 (N.D. Ill. Dec. 4, 2019) (untethered statement concerning policies and procedures about treatment does not alert prison officials to a particular problem or invite them to take corrective action).

The Court finds that Plaintiff failed to exhaust his administrative remedies prior to filing suit. Defendants' Motion for Summary Judgment is GRANTED. Defendants Wexford and Power are DISMISSED with prejudice.

**IT IS THEREFORE ORDERED:**

1) Defendants' Motion for Summary Judgment [72] is GRANTED. Defendants Sherri Power and Wexford Health Sources, Inc. are DISMISSED with prejudice. The Clerk is directed to terminate Defendants Power and Wexford.

2) This case will proceed against the remaining IDOC Defendants – Leonta Jackson, Anita Bunce, Sabrina Fox, David Hanson, John Overfelt, Elaine Smith, Patricia Swisher, Ashley Kinsella, and Kim Williams.

3) Discovery on the merits was stayed until the Court ruled on Defendants' Motion for Summary Judgment. (See d/e 10/22/2022). The discovery deadline is RESET for August 4, 2023. The dispositive motions deadline is RESET for September 5, 2023.

ENTERED: 5/11/23

                                                             s/ James E. Shadid
                                                             James E. Shadid
                                                             United States District Judge